IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br>    Plaintiff,<br><br><br>vs.<br><br><br>DIRECT MORTGAGE CORPORATION,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO RECONSIDER AND AMENDING THE SEPTEMBER 24, 2015 ORDER (ECF NO. 90)<br><br><br><br><br><br>Case No. 2:12-cv-01189-TC |

Plaintiff JPMorgan Chase Bank, N.A., (Chase) has sued Defendant Direct Mortgage Corporation (Direct) over loans formed under a Correspondent Origination and Sales Agreement (COSA).  There are other loans and agreements involved in the lawsuit, but they are not relevant to the issues involved in this order.  Both parties filed cross motions for summary judgment, and the court denied those motions.  (Mem. Dec. & Order, ECF No. 90.)  In the court's order, it held that subsection 4.2(L) of the COSA requires Chase to prove that Direct knew about, or was wilfully blind to, about false or incomplete information in the credit and loan files it had originated.  (Id.)

Chase filed a Motion to Reconsider asking the court to re-examine that conclusion.  (ECF No. 91.)  The court has considered the written arguments and concludes that the contract language is ambiguous and the court should accept extrinsic evidence at trial to help determine what the parties agreed to in subsection 4.2(L).

Construction of contract language, under New Jersey law,[1] calls for a court to "[f]irst and foremost, . . . 'examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances.'"  Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 892 A.2d 646, 656 (N.J. 2006) (quoting State Troopers Fraternal Ass'n v. New Jersey, 692 A.2d 519 (N.J. 1997)).  "Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose."  Republic Bus. Credit Corp. v. Camhe-Marcille, 887 A.2d 185, 188 (N.J. Super. Ct. App. Div. 2005) (quoting Newark Publishers' Ass'n v. Newark Typographical Union, 126 A.2d 348 (N.J. 1956)).  But "[i]f the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists," and "a court may look to extrinsic evidence as an aid to interpretation."  Chubb Custom Ins. Co., v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1289 (N.J. 2008) (quoting Nexter v. O'Donnell, 693 A.2d 1214 (N.J. Super. Ct. App. Div. 1997).

The contract language Chase asks the court to re-analyze reads:

> No representation, warranty or written statement made by Correspondent in this Agreement, nor any application, documentation, schedule, exhibit, statement, or certificate furnished to Chase by Correspondent contains any untrue statement of material fact or fails to state any material fact which could render such statement misleading.  All information contained in the Credit File or Loan File is true, complete and accurate; Correspondent is not aware of any fact not set forth in the Credit File or Loan File which Chase might reasonably consider to be adverse to the approval of the loan, or would make the Loan ineligible for sale in the secondary market . . . .

---

[1] The parties agree that New Jersey law governs the interpretation of the contract. (COSA § 7.8, ECF No. 2-2.)

(COSA § 4.2(L), ECF No. 2-2.)  The meaning of the second sentence, and its two clauses, is where the two parties' dispute primarily lies.  Chase argues that the two clauses have two separate meanings: the first clause means that Direct is strictly liable for any falsity or incompleteness within the Credit File[2] or Loan File[3] (collectively "Files"); and the second clause means that Direct is liable for facts that it never disclosed, that were outside the Files, that it knew about, and that would likely affect the loans marketability.  Chase focuses on whether the information was inside or outside the Files.  If it was within the Files, Direct would be strictly liable; and if it was outside the Files, Direct would be liable for only that information it knew about.

One difficulty with Chase's construction is that it is difficult to conceive of a reasonable scenario in which the particular fact would fall outside the Files and yet would still affect a

_____

[2] The COSA defines "Credit File" as "All documentation required by Chase for underwriting review as established by Chase Correspondent Lending Guide."  (COSA art. I, ECF No. 2-2.)

[3] The COSA defines "Loan File" as:

> All documentation required for a Loan as established by Chase Correspondent Lending Guide, including but not limited to the Mortgage Note (properly endorsed to the order of Chase), the recorded Mortgage (or in the case of cooperatives, delivery of the pledged shares, an assignment of the proprietary lease, escrow deposits, and other operative documents and related financing statements), the recorded Assignment of Mortgage, evidence of all required insurance, all required disclosures, and any other documentation required by Chase Correspondent Lending Guide.

(Id.)

loan's marketability.  If the particular fact affected a loan's marketability, then the fact would likely be required to make the Files complete.

Another difficulty is how the two sentences of subsection 4.2(L) relate to one another. The first sentence addresses "statements of material fact" furnished to Chase, and the second sentence addresses "all information" in the Files.  If in one sentence, Direct warrants the particular statements, it seems out of the ordinary for the next sentence to say that Direct warrants all information.  The second sentence would subsume the purpose of the first sentence. So the natural or common-sense reading would be that the knowledge requirement limits the scope of the warranty of "all information."

The court originally agreed with Direct that the second sentence's two clauses, although grammatically independent, are intrinsically connected in substance.  The ordinary meaning of the two clauses, in the context of the contract, is that the second clause elaborates on and modifies the first as if it were an appositive clause.

Direct supports the court's reading and further argues that Chase has never required Direct to be strictly liable for the contents of the Files before now and that strict liability is inconsistent with Chase's allegedly flexible and loose guidelines.  But Chase does present a colorable argument that the parties intended to create two separate categories of information with different warranties.  The language is sufficiently ambiguous for the court to take evidence about the parties' intent at trial.  Chubb, 948 A.2d at 1289.

## ORDER

For the foregoing reasons, the court GRANTS the Motion to Reconsider (ECF No. 91) and amends the September 24, 2015 Memorandum Decision and Order (ECF No. 90) only so far as it complies with the above conclusion.  At trial, the court will take evidence to determine what the parties intended when they agreed to subsection 4.2(L).

DATED this 17th day of November, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge

5